1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joseph J. Tabacco, Jr. (SBN 75484)
Matthew D. Pearson (SBN 235339)
Alexander S. Vahdat (SBN 284963)
Christina Sarraf (SBN 328028)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermantabacco.com
        mpearson@bermantabacco.com
        avahdat@bermantabacco.com
        csarraf@ bermantabacco.com

*Attorneys for Plaintiffs*

[Additional Counsel Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ZONOBIA LOVE, ARMANDO MARQUEZ, and ANDREW ROSE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LADDER FINANCIAL, INC. and FULLSTORY, INC.<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

COME NOW the Plaintiffs, Zonobia Love, Armando Marquez and Andrew Rose, individually and on behalf of all others similarly situated, by and through their attorneys, and file this Class Action Complaint against Defendants Ladder Financial, Inc. and FullStory, Inc. In support thereof, Plaintiffs state the following:

**NATURE OF THE ACTION**

1.      Ladder Financial, Inc. ("Ladder") offers consumers quotes for insurance policies if they fill out a form online at Ladderlife.com. To obtain a quote, consumers must enter private information about themselves, including their protected health history.

2.      FullStory, Inc. ("FullStory") is a marketing software-as-a-service ("SaaS") company that sells a platform software product that records consumer interactions with a website in real time. Website owners can use this software by adding FullStory's JavaScript[1] into the source code of their website. This allows both FullStory and the website owner to record a visitor's keystrokes and other actions on the website. By supplying its software to Ladder and knowing Ladder's purpose in using its software, FullStory actively assisted Ladder and independently participated in the invasion of Plaintiffs' privacy and the privacy interests of the putative class as more fully described below.

3.      Ladder embedded FullStory's JavaScript in the source code on its website to optimize its lead generation efforts. Ladder and FullStory benefit financially from collecting information provided by potential customers, or "leads," who indicate an interest in purchasing insurance. Adding FullStory's JavaScript allowed both companies to surreptitiously observe and record visitors' keystrokes, mouse clicks, and other electronic communications, including their entry of Personally Identifiable Information ("PII") and Protected Health Information ("PHI").

4.      When users seeking an insurance quote enter private information on Ladderlife.com, Ladder shares those communications with FullStory in real time, without notifying users and without first obtaining their consent. The communications Ladder shares with FullStory include its users' geolocation and answers regarding their private personal and medical

---

[1] JavaScript is a programming language commonly used in website development to add features and functions to a website.

information, such as name, zip code, gender, age, height, weight, information regarding medical conditions, prescribed medications, use of tobacco products, marijuana or illegal drugs, criminal record history and current blood pressure and cholesterol levels. FullStory's software purports to increase the value of Ladder's leads by harvesting extra information about each person and independently documenting the information they provided.

5.    By wiretapping and intercepting website users' communications, Defendants Ladder and FullStory violate the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, and invade Plaintiffs' and class members' privacy rights in violation of the California Constitution.

6.    Between approximately October 2022 and December 2022, Plaintiffs accessed the Ladder website through their computers and mobile phones and used the Ladder website to search for an insurance quote, entering private information into the online form at Ladderlife.com. During Plaintiffs' visits, Defendants Ladder and FullStory recorded Plaintiffs' electronic communications in real time, and used the intercepted data to learn their identity, zip code, age, height, weight, use of prescription medications and tobacco products, and other PII and PHI without Plaintiffs' consent.

7.    Plaintiffs bring this action on behalf of themselves and a class of all Californians whose electronic communications were intercepted by Defendants through Ladder's use of FullStory's software on its website.

**JURISDICTION AND VENUE**

8.    This Court has jurisdiction over the claims alleged in this Class Action Complaint pursuant to 28 U.S.C. § 1332(d)(2)(A).

9.    Ladder is a Delaware corporation with its principal place of business in California. Ladder does business throughout the State of California and its registered agent for service is located at CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive Suite 150N Sacramento, CA 95833. The unlawful conduct of interception, tracking, and sharing consumers' online activity and private information without their consent as alleged herein occurred in the State

of California and was intended and did substantially affect business and commerce within this State.

10.    FullStory is a Delaware corporation with its principal place of business in Georgia. FullStory does business throughout the State of California. The unlawful conduct of intercepting, tracking, and sharing consumers' online activity and private information without their consent as alleged herein occurred in the State of California and was intended and did substantially affect business and commerce within this State.

11.    Pursuant to 28 U.S.C. § 1391, this Court is a proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claim herein occurred in this District.

12.    This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of Defendants conducting, engaging in, and/or carrying on business in California, and violating the laws of California. Defendants also purposefully availed themselves of the opportunity of conducting activities in the State of California by marketing its products within the State and intentionally developing relationships with customers within the State.

## DIVISIONAL ASSIGNMENT

13.    Pursuant to Northern District of California Civil Local Rules 3-2(c), 3-2(d), and 3-5(b), assignment to the San Francisco or Oakland Division of this District is proper because Plaintiff Love resides in Sonoma County, California, and a substantial part of the events or omissions giving rise to the claim occurred in Sonoma County.

## PARTIES

14.    Plaintiff Zenobia Love is an adult resident citizen of the State of California and resides in Sonoma County, California.

15.    Plaintiff Armando Marquez is an adult resident citizen of the State of California and resides in Riverside County, California.

16.    Plaintiff Andrew Rose is an adult resident citizen of the State of California and resides in Ventura County, California.

17.     Ladder is a Delaware corporation with its principal place of business in Palo Alto, California.

18.     Ladder is an insurance company that provides consumers with life insurance by enabling consumers to make purchases online.

19.     Ladder does business throughout California and the entire United States.

20.     Ladder owns and operates Ladderlife.com.

21.     Defendant FullStory is a Delaware corporation with its principal place of business in Atlanta, Georgia.

22.     FullStory is a SaaS company.  In connection with its services to website operators, FullStory provides software which monitors and records a website user's activity on a webpage. This purports to increase the value of leads generated on third party websites by independently capturing, storing and documenting the information each lead provides and harvesting additional information about them such as their IP address and geolocation.

## FACTUAL ALLEGATIONS

I.   **FULLSTORY'S SOFTWARE**

23.     Defendant FullStory provides a variety of real-time software products marketed as "Digital Experience Intelligence" for companies that want to generate leads for products or services.[2]

24.     FullStory records real-time consumer interactions with websites, including keystrokes, mouse clicks, and other electronic communications.  Through its "Session Replay" feature, FullStory allows endless replays that capture a moment-by-moment replay of what happened on the webpage in the order in which it happened, capturing what the consumer does on the page.[3]

---

[2]   FullStory, *The Leading Digital Experience Intelligence*, FullStory, https://www.fullstory.com/platform/digital-experience-intelligence/ (last visited July 26, 2023).

[3]   FullStory, *Explore the FullStory Platform*, Step 15 of 18, FullStory, https://www.fullstory.com/resources/fullstory-platform-tour/ (last visited July 26, 2023) ("FullStory's Session Replay safely and securely reproduces a user's interactions exactly how the user actually experienced it.").

25.     FullStory permits prospective partners to add its JavaScript to their form page and start capturing lead certificates.  As soon as the JavaScript is added to a webpage, FullStory will automatically start to capture the data submitted in the form.

26.     FullStory's JavaScript allows it to record the keystrokes, mouse clicks, data entry, and other electronic communications of visitors to websites where the JavaScript is installed.  It also allows FullStory to track real-time events, historical-based reports, and other information described above.  FullStory in turn, provides this data to its clients.

27.     On its website, FullStory advertises that it collects this data immediately provides "a video-like reproduction of the customer experience online."[4]

28.     The recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with a website that contains the JavaScript. Upon information and belief, FullStory's software transmits the information captured to FullStory's server, where it is stored and monitored for changes or other activities by the website user.  Because this data is stored or can be accessed by FullStory, it can use or access Plaintiffs and the putative class members' data for other purposes.  Additionally, FullStory retains user "Replay sessions" and provides data retention to its customers and charges a fee for storing and retaining this data.[5]

29.     In a 2017 study by Princeton University researchers concerning similar technology, the researchers noted that "the extent of data collected by these services far exceeds user expectations; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user."[6]

---

[4] FullStory, *The Definitive Guide to Session Replay*, FullStory, https://www.fullstory.com/session-replay (last visited July 26, 2023).

[5] FullStory, *How Long Is Data Kept in FullStory?*, FullStory, https://help.fullstory.com/hc/en-us/articles/360020623694-How-long-is-data-kept-in-FullStory- (last visited July 26, 2023).

[6] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts*, Freedom To Tinker (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.

30.     After adding FullStory's JavaScript into the HTML of a webpage, a unique certificate is automatically generated for every lead. This allows both FullStory and the webpage owner to record keystrokes, mouse clicks, data entry, and other electronic communications of site users.

31.     FullStory's business model involves entering into voluntary partnerships with various companies and providing its software to its partners for a fee. One of FullStory's partners is Ladder. Both FullStory and Ladder benefit financially from Ladder's use of FullStory's lead generation software. FullStory benefits financially when Ladder purchases its software services. And Ladder benefits financially from sharing users' data with FullStory, including because "certifying" leads and harvesting extra data about the users increases the value of the leads, which Ladder uses or sells to lead buyers. Thus, both FullStory and Ladder benefit financially from Ladder's use of FullStory's software services.

32.     Ladder provides a variety of insurance products. To obtain a quote on a Ladder insurance plan, consumers fill out a form online at Ladderlife.com. Users are prompted to select the "get my price" button.

33.     Ladder uses FullStory's JavaScript on Ladderlife.com, which is embedded into the source code of Ladder's website, as shown in the red box below:

34.    After selecting the "get my price" button, consumers are required to answer multiple questions, including questions about their medical health.  The consumer's responses are automatically sent to FullStory.  Consumers must communicate to Ladder information including, but not limited to:

        a.      Name, zip code, gender, and age;

        b.      Height and weight;

        c.      Use of prescription medications and tobacco products;

        d.      Medical conditions;

        e.      The use of marijuana and THC;

        f.      Use of illegal drugs; and

        g.      Criminal record history.

35.    FullStory is not an affiliate of Ladder; it is a third-party.  An ordinary consumer would not know—and nothing on the face of Ladderlife.com gives any indication—that their answers in the insurance quote form are being recorded and shared with a third party such as FullStory.

36.     Without the consent of the user, Ladder enables FullStory to monitor, intercept, and record a user's interactions with the site as it asks questions to obtain the above information. The information—including the information listed in Paragraph 34, above—is then automatically transmitted to FullStory in real time while in transit.  After answering the questions seeking the information listed in Paragraph 34, users can obtain a quote for insurance.

37.     Users who visit Ladder's website to get an insurance quote are not put on notice of its Privacy Statement, the Terms of Use, or provided with any other notification that the sensitive information they are submitting is being recorded by Ladder or FullStory or shared by Ladder with FullStory or any other third party.

38.     Rather, only those consumers who locate and take the extra step to click on the hyperlink "CA Privacy Notice" located at the bottom of the Ladderlife.com website are informed that Ladder collects PHI and PII.  The "CA Privacy Notice" —known as a "browsewrap" agreement—is not effective or enforceable.

39.     Even still, the browsewrap notice does not notify users of the collection and sharing of their information, which has already been recorded and shared in real time, submitted during the insurance quote form process.

40.     Ladder does not obtain consent from consumers to collect or share this information with third parties such as FullStory before, during, and/or after consumers submit their sensitive information to obtain an insurance quote.

41.     Only if a user were able to find, click, and read through the "CA Privacy Notice" would a consumer learn that Ladder "may disclose to or allow access to certain information about you by our online advertising and analytics partners."

42.     However, Plaintiffs and others who fill out an insurance quote form and provide their private information are not put on notice of Ladder's Terms and CA Privacy Notice.   As seen in the screenshot below of the webpage presented to users when they are in the process of filling out the form, Ladder's Terms and CA Privacy Notice are not accessible from this page. They are not made available on the page even via hyperlink, and nowhere on the page are users informed that their responses are being recorded, transmitted to, and intercepted by a third party.

43.     Ladder's Terms and CA Privacy Notice can only be accessed through a hyperlink that is located, among a multitude of links, in small letters at the very bottom of its homepage and not on the Application or "Get My Price" webpage.[7]

44.     By the time Plaintiffs and other consumers began to complete the online form, the interception has already occurred and their personal information had already been captured and shared without their knowledge or consent.  In other words, even if a user, such as Plaintiffs, reaches the point where he or she locates Ladder's CA Privacy Notice, decides to click through and review the CA Privacy Notice, and then does not agree and leaves the website, that user's personal information has already been captured, intercepted, and shared in real time.

45.     Ladder failed to give Plaintiffs and members of the putative class adequate notice that their form responses have been intercepted and transmitted to FullStory and that their activity will continue to be intercepted, transmitted to, and monitored by FullStory going forward.  This conduct by Ladder and FullStory continues to this day.

46.     Ladder knows it captures the keystrokes, mouse clicks, and other communications of visitors to its website, and Ladder supplies that information to FullStory and pays FullStory for this service.

---

[7] Ladder, *Get Instant Term Life Quote*, Ladder, https://www.ladderlife.com/apply (last accessed on July 26, 2023).

47.     Pursuant to an agreement with FullStory, Ladder enables user information to be tracked by voluntarily embedding FullStory's JavaScript into its website at Ladderlife.com.

48.     As currently deployed, this functions as a wiretap.

49.     Ladder and FullStory, and each of them, intercepted, recorded, and monetized valuable personal information without the consent of website users.  Ladder recognizes the value and market for this information. Ladder uses or sells "leads" containing the intercepted information, and FullStory's product is designed to facilitate and increase the value of those leads.

**II.     DEFENDANTS WIRETAPPED PLAINTIFFS' ELECTRONIC COMMUNICATIONS**

50.     From approximately October 2022 to December 2022, Plaintiffs accessed the Ladder website through their computers and mobile phones and used Ladder's website to search for an insurance quote. Plaintiffs and the class used smart phones (cellular telephony with integrated operating systems to enable web browsing) and/or personal computers or Wi-Fi-enabled laptops using a combination of cellular and landline telephony.  As such, the conversations with Defendants were transmitted from a "cellular radio telephone" and/or "landline telephone" as defined by CIPA.

51.     Plaintiffs were in California on each occasion that they visited the website.

52.     During each visit, Ladder and FullStory recorded Plaintiffs' electronic communications in real time, using the intercepted data to attempt to learn the identity, zip code, age, height, weight, use of prescription medications and tobacco products, and other PII and PHI of Plaintiffs while they sought an insurance quote.

53.     Plaintiffs were unaware at the time that their keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real time and were being disclosed to FullStory (a third party), nor did Plaintiffs consent to share their private information with FullStory.

54.     During Plaintiffs' visits, FullStory's "Session Replay" feature recorded a video capturing Plaintiffs' keystrokes and mouse clicks on the website.  It also captured the date and

1    time of each visit, the duration of the visit, Plaintiffs' IP addresses, their location at the time of the

2    visit, browser type, and the operating system on their devices.

3        55.    Users, including Plaintiffs, did not receive notice of Ladder's Privacy statement

4    when they click, "Get my price," which initiates the interception of their responses on the form.

5        56.    Nor do users provide informed consent when providing personal information that

6    had already been intercepted and captured without their knowledge or consent.

7        57.    Further, because users are not adequately informed that their activity is being

8    intercepted, users also do not provide informed consent to the interception of the answers they

9    provide.

10        58.    Ladder did not tell Plaintiffs or other visitors to its websites that their keystrokes,

11    mouse clicks and other communications were being recorded and shared with FullStory.  Even

12    Ladder's more limited disclosures were not made, if at all, until *after* the interception had already

13    taken place.

14        59.    Neither Plaintiffs nor any class member consented to being wiretapped on Ladder's

15    website or to the recording and sharing of their communications with FullStory.  Furthermore, any

16    purported consent was ineffective because (i) the wiretapping began from the moment Plaintiffs

17    and class members accessed Ladder's website; and (ii) the Privacy statement did not disclose the

18    wiretapping, FullStory's interception and recording of their PII, or its sharing of sensitive

19    information.

20        60.    At no time before or during a user's browsing of its website does Ladder disclose

21    that it will be recording users' activities in real time.

22        61.    Nor does Ladder's Privacy statement disclose that it is recording a user's activities

23    in real time.  Even if Ladder had disclosed its wiretapping at issue in its Privacy Statement, Ladder

24    still acted without Plaintiffs' consent because Ladder does not ask for users' consent before it

25    began wiretapping them.

26

27

28

## CLASS ACTION ALLEGATIONS

62.    Plaintiffs bring this lawsuit as representative of a class of all resident citizens of California who visited Ladderlife.com and provided personal information on Ladder's form to receive a quote for insurance and whose information was intercepted and disclosed to FullStory.

63.    The "Class Period" begins four years preceding the date of the filing of the initial complaint and continues to the present.

64.    Plaintiffs reserve the right to modify, change, or expand the class definition as appropriate based on further investigation and discovery obtained in the case.

65.    Excluded from the class are Defendants, their employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiffs' counsel.

66.    This action may be properly maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.

67.    **Numerosity:**    The class is sufficiently numerous because it consists of at least thousands of individuals, making joinder impractical.

68.    **Commonality and predominance:** A well-defined community of interest exists among class members.  Common questions of law and fact exist with regard to each of the claims and predominance over questions affecting only individual class members.  Questions common to the class include:

a.    whether Defendants violate the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632.7;

b.    whether Defendants invaded Plaintiffs' and putative class members' privacy rights in violation of the California Constitution;

c.    whether class members are entitled to actual and/or statutory damages for the aforementioned violations; and

d.    whether Defendants should be enjoined from engaging in such conduct in the future.

69.    **Typicality:**  The claims of the named Plaintiffs are typical of the claims of the class that they represent and arise out of the same standard form improper conduct perpetrated on members of the class.

70.    **Adequacy of representation:**  Plaintiffs will fairly and adequately protect the interests of the members of the class that they represent and have no interest antagonistic to those of other class members.  Plaintiffs have retained class counsel competent to prosecute class actions and financially able to represent the class.

71.    **Superiority:**  The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable.  The common questions of law and fact regarding Defendants' conduct and the interpretation of form documents devised by Defendants predominate over any questions affecting only individual class members.  The interest of judicial economy strongly favors adjudicating the claims as a class action rather than on an individual basis because the amount of any individual's damages is too small to make it practicable to bring individual lawsuits.  The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation.   Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives.

72.    Class action treatment is proper, and this action should be maintained as a class action because questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

73.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Class-wide treatment provides

1  the Court with authority and flexibility to maximize the efficiencies and benefits of the class

2  mechanism and reduce management challenges.

3       74.  **Injunctive relief:**  Defendants have acted or refused to act on grounds generally

4  applicable to the class, thereby making appropriate final injunctive relief and corresponding

5  declaratory relief with respect to the class as a whole.

6  **COUNT I**<br>**Violation of the California Invasion of Privacy Act ("CIPA")**<br>**Cal. Penal Code § 631**

7

8       75.  Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if

9  fully set forth herein.

10      76.  Plaintiffs bring this claim individually and on behalf of the members of the class

11 against Defendants.

12      77.  To establish liability under section 631(a), a plaintiff need only establish that the

13 defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any

14 of the following:

15          Intentionally taps, or makes any unauthorized connection, whether physically,

16          electrically, acoustically, inductively or otherwise, with any telegraph or telephone

17          wire, line, cable, or instrument, including the wire, line, cable, or instrument of any

18          internal telephone communication system,

19          *Or*

20          Willfully and without the consent of all parties to the communication, or in any

21          unauthorized manner, reads or attempts to read or learn the contents or meaning of

22          any message, report, or communication while the same is in transit or passing over

23          any wire, line or cable or is being sent from or received at any place within this

24          state,

25          *Or*

26          Uses, or attempts to use, in any manner, or for any purpose, or to communicate in

27          any way, any information so obtained,

28          *Or*

1    Aids, agrees with, employs, or conspires with any person or persons to unlawfully

2    do, or permit, or cause to be done any of the acts or things mentioned above in this

3    section.

4    78.    Section 631(a) is not limited to phone lines but also applies to newer technology

5    such as computers, the internet, and email.

6    79.    FullStory's software product is a "machine, instrument, contrivance, or . . . other

7    manner" used to engage in the prohibited conduct at issue in this action.

8    80.    FullStory's software product intercepts class members' communications in transit

9    while passing over the lines of internet communication by recording them in real time as the user

10    enters information.  Plaintiffs and the putative class members' communications with Ladder were

11    conducted using smart phones (cellular telephony with integrated operating systems to enable web

12    browsing) and/or personal computers or Wi-Fi-enabled laptops and over the lines of internet

13    communication.

14    81.    **Ladder's Violations:** At all relevant times, by using FullStory's software

15    technology, Ladder:

16        a.    intentionally tapped, electrically or otherwise, the lines of internet

17            communication between Plaintiffs and class members on the one hand, and

18            Ladder's website on the other hand; and

19        b.    aided, agreed with, employed, and conspired with FullStory to implement

20            FullStory's technology and to accomplish the wrongful conduct at issue

21            here.

22    82.    **FullStory's Violations:** At all relevant times, by providing its software service to

23    Ladder, FullStory:

24        a.    intentionally tapped, electrically or otherwise, the lines of internet

25            communication between Plaintiffs and class members on the one hand, and

26            Ladder's website on the other hand;

27        b.    willfully and without the consent of all parties to the communication, read

28            or attempted to read or learn the contents or meaning of electronic

communications of Plaintiffs and class members, while the electronic communications were in transit or passing over any wire, line, or cable or were being sent from or received at any place within California; and

c.    aided, agreed with, employed, and conspired with Ladder to implement FullStory's technology and to accomplish the wrongful conduct at issue here.

83.    Plaintiffs and class members did not consent to any of Defendants' actions connected with FullStory's wiretaps on Ladder's website. Nor did Plaintiffs or class members consent to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiffs' and class members' electronic communications.

84.    Defendants' violation of section 631(a) constitutes an invasion of privacy. Information transmitted by Plaintiffs and intercepted by Defendants included, among other things, Plaintiffs' name, zip code, gender, age, height, weight, use of prescription medications and tobacco products, medical conditions, use of marijuana and THC, use of illegal drugs and criminal record history. This information is sensitive and confidential and Plaintiffs had a reasonable expectation of privacy when they believed that they were only sharing this information with Ladder for the purpose of obtaining an insurance quote from Ladder. Defendants' intentional interception and misuse of Plaintiffs' sensitive and confidential information is highly offensive and egregious. Plaintiffs' personal and confidential information constitutes more than digital identification information such as an IP address. Instead, Plaintiffs' PII and PHI was illegally obtained by FullStory and Ladder provided FullStory access to Plaintiffs' PII and PHI. Plaintiffs' PII and PHI are sensitive and confidential information and the disclosure and interception of Plaintiffs' PII and PHI by Defendants is highly offensive and constitutes egregious conduct.

85.    Unless enjoined, Defendants will continue to commit these illegal acts. Plaintiffs continue to desire to use the internet, including Ladder's website, to search for information about and shop for insurance, but do not want their personal data informing an insurance quote to be wiretapped again. In addition to Ladderlife.com, Ladder operates different websites using various names, and partners with many other companies who operate their own websites. FullStory

provides its software product to many other website operators who offer a wide array of services. For Ladderlife.com and many other websites that Plaintiffs are likely to visit in the future, they have no practical way to know if their website communications will be monitored or recorded by FullStory, or by both Defendants.

86.    Plaintiffs and class members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

<u>**COUNT II**</u>
**Violation of California Invasion of Privacy Act**
**Cal. Penal Code § 632.7**

87.    Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

88.    Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."

89.    Plaintiffs and the class members communicated with Defendants using smartphones (sophisticated cellular radio telephones) and/or personal computers or Wi-Fi enabled laptops using cellular or landline telephony. As such, Plaintiffs' communication was transmitted from a "cellular radio telephone" and/or "landline telephone" as defined by Section 632.7.

90.    Consumer communication from the software functions on Ladder's website is transmitted and received via a combination of landline telephony and cellular telephony. As such, these communications with Plaintiffs and the class members were transmitted from telephony subject to the prohibitions of Section 632.7.

91.    As described herein, Defendants recorded telephony communication without the consent of all parties to the communication in violation of Section 632.7.

92.     As described herein, Ladder also assisted FullStory in the interception, reception, and/or intentional recordation of telephony communication in violation of Section 632.7.

93.     Defendants' conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 632.7, entitling Plaintiffs and class members to injunctive relief and statutory damages.

<u>COUNT III</u>
**Violation of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 *et seq.***

94.     Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

95.     Plaintiffs bring this claim individually and on behalf of the members of the class against Defendants.

96.     Defendants are each a "person" under Cal. Bus. & Prof. Code § 17201.

97.     The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

**Unlawful Conduct**

98.     Defendants' conduct is unlawful, in violation of the UCL, because as set forth herein, it violates CIPA, Cal. Penal Code § 631, and Plaintiffs' and class members' privacy rights under the California Constitution. Defendants are therefore in violation of the "unlawful" prong of the UCL.

**Unfair Conduct**

99.     Defendants' conduct is unfair because it violates California's constitutionally and legislatively declared public policy in favor of production of consumer privacy, including as is reflected in the CIPA and the California Constitution.

100.    Defendants acted in an immoral, unethical, oppressive, and unscrupulous manner by knowingly wiretapping Plaintiffs' and class member's communications of their private personal information without their consent.

101.    The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct.  The practice of wiretapping private communications, including confidential PII and PHI, harms the public at large and is part of a common and uniform course of wrongful conduct.  There are reasonably available alternatives that would further Defendants' business interests.  For example, Ladder could obtain a user's fully informed consent to share their data with a third party before doing so.  Similarly, FullStory could require affirmative user consent before recording consumer communications via software.

102.    The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.  Plaintiffs and class members had no reasonable means of discovering that Defendants were wiretapping Plaintiffs' and class members' communications of their private information on Ladderlife.com.

103.    Plaintiffs and class members have no adequate remedy at law as they are unable to use Ladder's website without being wiretapped or knowing whether they are being wiretapped.  Absent injunctive relief, Defendants' violations will continue to harm consumers.

104.    Unless enjoined, Defendants will continue to commit these illegal acts.  Plaintiffs continue to desire to use the internet, including Ladder's website, to search for information about and shop for various forms of insurance, but they do not want their personal data informing an insurance quote to be wiretapped again.  FullStory provides its software product to many other website operators who offer a wide array of services.  For Ladderlife.com and many other websites that Plaintiffs is likely to visit in the future, they have no practical way to know if their website communications will be monitored or recorded by FullStory, or by both Defendants.

105.    Plaintiffs and class members seek appropriate relief under the UCL, including such orders as may be necessary to enjoin Defendants from continuing their unlawful and unfair acts or practices, including an order requiring Defendants to remove FullStory's software from Ladderlife.com or to obtain fully informed consent from users before any of their confidential information has been recorded.

106.   To prevent injury to the general public, Plaintiffs seek an injunction requiring Defendants to remove FullStory's software product from Ladderlife.com or to obtain fully informed consent from users before recording any of their confidential information.

107.   Plaintiffs and class members seek injunctive relief under the UCL, as well as attorneys' fees and costs under Code of Civil Procedure section 1021.5.

**COUNT IV**
**Invasion of Privacy**
**California Constitution, Art. 1, § 1**

108.   Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

109.   Plaintiffs bring this claim individually and on behalf of the members of the class against Defendants.

110.   Plaintiffs and class members have a strong interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII and PHI; and (2) making personal decisions and/or conducting personal activities without observation, intrusion, or interference, including the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiffs' and class members' knowledge or consent.

111.   Defendants wrongfully intruded upon Plaintiffs' and class members' seclusion in violation of California law.  Plaintiffs and class members reasonably expected that the private personal information sensitive, confidential PII and PHI they entrusted to Ladder would be kept private and secure and would not be disclosed to any unauthorized third party or for any improper purpose.

112.   At all relevant times, by implementing FullStory's wiretaps on Ladder's website, each Defendant intentionally invaded Plaintiffs' and class members' privacy rights under the California Constitution and procured the other Defendant to do so.

113.   Defendants unlawfully invaded Plaintiffs' and class members' privacy rights by:

   a.   Harvesting their personal information, including sensitive, confidential PII and PHI, and transmitting it to unauthorized third parties or for improper purposes;

b.      enabling the disclosure of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

c.      enabling the disclosure of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

114.    A reasonable person would find it highly offensive that Defendants received, collected, and stored Plaintiffs' and class members' private personal information without their consent.

115.    Plaintiffs and class members did not consent to any of Defendants' actions in implementing FullStory's wiretaps on Ladder's website.

116.    In failing to adequately protect Plaintiffs' and class members' personal information, Defendants acted knowingly and in reckless disregard of their privacy rights.  Defendants were aware that using FullStory's software product on Ladderlife.com would share user's private information with FullStory, an unauthorized third party.  Nevertheless, Ladder chose to use, and FullStory chose to offer its software without users' consent.  Defendants also knew or should have known that their conduct would be highly offensive to a reasonable person in Plaintiffs' position.

117.    Defendants' unlawful invasions of privacy damaged Plaintiffs and class members. As a direct and proximate result of these invasions, Plaintiffs and class members suffered mental distress, and their reasonable expectation of privacy were frustrated and defeated.

118.    This invasion of privacy is serious in nature, scope, and impact.

119.    This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

120.    Plaintiffs and class members therefore seek all relief available for an invasion of privacy in violation of Article I, Section 1 of California's Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request the Court enter judgment against Defendants through an order:

a.      Certifying the class under Fed. R. Civ. P. 23 and naming Plaintiffs as the representatives of the class and Plaintiffs' attorneys as class counsel;

b.    Declaring that the Defendants' conduct violates the laws and standards referenced above;

c.    Finding in favor of Plaintiffs and the class on all counts asserted herein;

d.    Granting Plaintiffs and the class compensatory, statutory, and/or punitive damages or restitution;

e.    Awarding prejudgment interest on all amounts awarded;

f.    Entering appropriate injunctive relief;

g.    Awarding Plaintiffs and the class their reasonable attorneys' fees and expenses and costs of suit; and

h.    Such other and further relief as the Court deems necessary or appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all claims and issues so triable.

Dated: August 18, 2023                Respectfully submitted,

**BERMAN TABACCO**

By:    */s/ Matthew D. Pearson*
        Matthew D. Pearson

Joseph J. Tabacco, Jr.
Alexander S. Vahdat
Christina Sarraf
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermantabacco.com
        mpearson@bermantabacco.com
        avahdat@bermantabacco.com
        csarraf@bermantabacco.com

Christina D. Crow (*pro hac vice* application forthcoming)
**JINKS CROW, PC**
Union Springs Office
219 Prairie Street North
Union Springs, Alabama 36089
Telephone: (334) 738-4225
Facsimile: (334) 738-4229
Email: christy.crow@jinkscrow.com

Brent Irby (*pro hac vice* application forthcoming)
**IRBY LAW LLC**
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: (205) 936-8281
Email: brent@irbylaw.net

James M. Terrell (*pro hac vice* application forthcoming)
Brooke B. Rebarchak (*pro hac vice* application
forthcoming)
**METHVIN & TERRELL, YANCEY, STEPHENS &
    MILLER, P.C.**
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone: (205) 939-3006
Email: jterrell@mtattorneys.com
        brebarchak@mtattorneys.com

*Attorneys for Plaintiffs and the Proposed Class*

Joseph J. Tabacco, Jr. (State Bar No. 75484)
Matthew D. Pearson (State Bar No. 235339)
Alexander S. Vahdat (State Bar No. 284963)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermantabacco.com
       mpearson@bermantabacco.com
       avahdat@bermantabacco.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ZONOBIA LOVE, ARMANDO MARQUEZ, and ANDREW ROSE, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION** |
| v. | **AFFIDAVIT IN SUPPORT OF VENUE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |
| LADDER FINANCIAL, INC. and FULLSTORY, INC. | |
| Defendants. | |

## AFFIDAVIT OF MATTHEW D. PEARSON

I, Matthew D. Pearson, state and declare as follows:

1.     I am an attorney duly admitted to practice law in the State of California. I make this affidavit pursuant to California Civil Code Section 1780(d). The facts contained in this affidavit are true and correct to the best of my knowledge, information, and belief.

2.     The complaint in this action is filed in the proper place for trial of this action

because Defendants' main offices are in Milpitas, California and San Jose, California, both in Santa Clara County; Defendants conduct substantial business within Santa Clara County; and the events, acts, and omissions that are subject to any claim in this matter occurred, in substantial part, within Santa Clara County. Therefore, the appropriate venue for this matter is the U.S. District Court for the Northern District of California, San Jose Division.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 18th day of August, 2023, in Walnut Creek, California.

_____*/s/ Matthew D. Pearson*_____
Matthew D. Pearson