Joseph J. Tabacco, Jr. (SBN 75484)
Matthew D. Pearson (SBN 235339)
Alexander S. Vahdat (SBN 284963)
Christina Sarraf (SBN 328028)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermantabacco.com
        mpearson@bermantabacco.com
        avahdat@bermantabacco.com
        csarraf@ bermantabacco.com

*Attorneys for Plaintiffs*

[Additional Counsel Listed on Signature Page]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ZONOBIA LOVE, ARMANDO MARQUEZ, and ANDREW ROSE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LADDER FINANCIAL, INC. <br><br> Defendant. | Case No. 3:23-cv-04234-VC <br><br> **CLASS ACTION** <br><br> **AMENDED** <br> **CLASS ACTION COMPLAINT** <br><br> Courtroom: 4 – 17th Floor <br> Judge: Hon. Vince Chhabria <br><br> **DEMAND FOR JURY TRIAL** |

COME NOW the Plaintiffs, Zonobia Love, Armando Marquez and Andrew Rose, individually and on behalf of all others similarly situated, by and through their attorneys, and file this Class Action Complaint against Defendant Ladder Financial, Inc.  In support thereof, Plaintiffs allege the following:

## NATURE OF THE ACTION

1.      Ladder Financial, Inc. ("Ladder") offers consumers quotes for insurance policies if they fill out a form online at Ladderlife.com.  To obtain a quote, consumers must enter private information about themselves, including their personally identifiable information ("PII") and protected health information ("PHI").

2.      Ladder's co-perpetrator, FullStory, Inc.'s ("FullStory"), business model involves entering into voluntary partnerships with various companies and providing "Digital Experience Intelligence" tools to these clients for a fee.[1]  FullStory describes its "Digital Experience Intelligence" tools as "x-ray vision" which allows clients (and FullStory) to "see everything: all your quantitative and qualitative experience data, captured automatically and retroactively. . ."[2]

3.      One of FullStory's clients is Ladder.  Both FullStory and Ladder benefit financially from Ladder's use of FullStory's "Digital Experience Intelligence" tools.  FullStory benefits in several ways.  First, it benefits financially when Ladder purchases its services.  Second, and more importantly, it benefits by using Plaintiffs' and the putative class members' PII and PHI for its own commercial purposes.  FullStory admits that it uses this information to "***manage***, ***operate*** and ***improve*** [its] Services," "***grow*** [its] business" and "for ***research***, ***analysis***, ***modeling***, ***marketing***, and ***improvement*** of [its] Services."[3]  On the other hand, Ladder benefits financially from sharing users' data with FullStory, because FullStory's analytics tools allow Ladder to harvest extra data about its website visitors.  This information increases the value of

---

[1] FullStory, *The Leading Digital Experience Intelligence Platform*, FullStory, https://www.fullstory.com/platform/digital-experience-intelligence/ (last visited January 24, 2024).

[2] *Id.*

[3] FullStory, *Privacy Policy*, FullStory, https://www.fullstory.com/legal/privacy-policy (emphasis added) (last visited January 24, 2024) (emphasis added).

1    those website leads, which Ladder then uses for its benefit by selling or sharing the data with its

2    "online advertising/analytics partners."[4]  Thus, both FullStory and Ladder benefit financially

3    from Ladder's use of FullStory's "Digital Experience Intelligence" tools.

4        4.    By installing FullStory's "Digital Experience Intelligence" tools (including

5    "proprietary autocapture" and "session replay") on its website, Ladder aided, agreed with,

6    employed, or conspired with FullStory to allow FullStory to intercept, capture, record, store, and

7    share Plaintiffs' PII and PHI.  These tools provided FullStory complete access to Plaintiffs' PII

8    and PHI simultaneously and in real time as Plaintiffs were transmitting the information to Ladder

9    through its website.

10       5.    FullStory describes "session replay" as "the reproduction of a user's interactions

11   on a website or web application exactly how the user actually experienced it.  Session replay

12   transforms logged user events, such as mouse movements, clicks, page visits, scrolling, tapping,

13   etc. into a reproduction of what the user actually did on the site or app."[5]  FullStory further

14   describes "session replay" in this way:  "[i]magine someone took detailed notes about your day –

15   where you went and when, what it looked like, what you did, how you acted, etc."[6]

16       6.    FullStory's "session replay" even monitors Ladder's customers' movements

17   across open tabs in their web browsers.  This monitoring could even include open tabs which are

18   unrelated to Ladder's website.  Along with heat mapping, scroll mapping, journey mapping, and

19   other spyware tools, FullStory tracked Plaintiffs' movements across websites and webpages.[7]

20   FullStory's capture of data and information even provided Ladder and FullStory with the

21

22



23   [4] Ladder, *Our Privacy Policy*, Ladder, https://www.ladderlife.com/privacy#Information-We-Collect (last visited January 24, 2024).

24   [5] FullStory, *What is Session Replay*, FullStory, https://www.fullstory.com/session-replay/ (last visited January 24, 2024).

25   [6] *Id.*

26   [7] FullStory, *Introducing Tabbed Browsing Visibility Within FullStory Session Replay*, FullStory, https://www.fullstory.com/blog/tabbed-browsing-in-fullstory/ (last visited January 24, 2024);

27   FullStory, *Journey Maps*, FullStory, https://www.fullstory.com/platform/journey-maps/ (last visited January 24, 2024); FullStory, *Heatmaps*, FullStory,

28   https://www.fullstory.com/platform/heatmaps/ (last visited January 24, 2024);

1    "[a]bility to identify [browsing] sessions by user."[8]

2        7.    Website owners, like Ladder, simply add FullStory's JavaScript[9] into the source

3    code of their website.  This benefits Ladder by providing it with analytics and insights about

4    visitors to its website.  However, the source code allows FullStory to tap, read, learn the contents

5    of, record, use, disclose, analyze, and make reports of a visitor's keystrokes and other actions on

6    Ladder's website.  Again, FullStory acknowledges that it uses this information for its own

7    commercial purposes including "for **research**, **analysis**, **modeling**, **marketing**, and **improvement**

8    of [its] Services."[10]  FullStory, with Ladder's aid, agreement, knowledge, and/or assistance,

9    invaded Plaintiffs' privacy and the privacy interests of the putative class by tapping or

10   eavesdropping on Plaintiffs' private communications with Ladder and by intercepting, capturing,

11   or recording Plaintiffs' confidential information and then using that confidential information for

12   its own commercial purposes.

13       8.    Ladder embedded FullStory's JavaScript in the source code on its website.  Every

14   time someone visits Ladder's website, the script is deployed onto their cell phone, computer,

15   laptop, tablet, or other device for the purpose of watching and recording their interactions with

16   Ladder's website.  FullStory's spyware was active on Ladder's entire website and allowed

17   Ladder and FullStory to surreptitiously observe, intercept, capture, and record visitors'

18   keystrokes, mouse clicks, and other electronic communications, including their entry of PII and

19   PHI.

20       9.    When users seeking an insurance quote enter private information on

21   Ladderlife.com, FullStory intercepts, captures, and records those interactions in real time.

22   Neither Ladder nor FullStory notified Plaintiffs or other users of this activity by FullStory and

23   neither Ladder nor FullStory obtained Plaintiffs' prior consent.  The surreptitious tapping,

24

25   [8] FullStory, *What is Session Replay*, FullStory, https://www.fullstory.com/session-replay/ (last visited January 24, 2024).

26   [9] JavaScript is a programming language commonly used in website development to add features and functions to a website.

27   [10] FullStory, *Privacy Policy*, FullStory, https://www.fullstory.com/legal/privacy-policy

28   (emphasis added) (last visited January 24, 2024) (emphasis added).

capturing, recording, and reviewing of Plaintiffs' and putative class members' communications is the electronic equivalent of "looking over the shoulder" of each visitor to Ladder's website. The communications Ladder shared with FullStory included Plaintiffs' geolocation, information about other open tabs in Plaintiffs' web browsers, and Plaintiffs' PII and PHI, such as name, zip code, gender, age, height, weight, information regarding medical conditions, prescribed medications, use of tobacco products, marijuana or illegal drugs, criminal record history, and current blood pressure and cholesterol levels.  Between approximately October 2022 and December 2022, Plaintiffs accessed the Ladder website through their personal computers, laptops, mobile phones, or tablets and used the Ladder website to search for an insurance quote, entering PII and PHI into the online form at Ladderlife.com.  During Plaintiffs' visits, Defendant Ladder and its co-perpetrator, FullStory, recorded Plaintiffs' electronic communications in real time and used the intercepted data to learn users' identity, zip code, age, height, weight, use of prescription medications and tobacco products, and other PII and PHI without Plaintiffs' consent.

10.     By aiding, agreeing, employing, or conspiring to allow FullStory to wiretap and intercept Plaintiffs' and other Ladder website users' communications, Defendant Ladder violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, and invaded Plaintiffs' and class members' privacy rights in violation of the California Constitution.

11.     Plaintiffs bring this action on behalf of themselves and a class of all Californians whose electronic communications were intercepted by Defendant Ladder through its use of FullStory's autocapture and session replay tools on its website.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the claims alleged herein pursuant to 28 U.S.C. § 1332(d)(2)(A).

13.     Ladder is a Delaware corporation with its principal place of business in California.  Ladder does business throughout the State of California and its registered agent for service is located at CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive Suite 150N Sacramento, CA 95833.  The unlawful conduct of interception, tracking, and sharing consumers' online activity and private information without their consent as alleged herein occurred in the

1    State of California and was intended to and did substantially affect business and commerce

2    within this State.

3        14.    Pursuant to 28 U.S.C. § 1391, this Court is a proper venue for this action because

4    a substantial part of the events, omissions, and acts giving rise to the claim herein occurred in

5    this District.

6        15.    This Court has personal jurisdiction over Defendant Ladder because Ladder's

7    principal place of business is located in California and Plaintiffs' claims arise out of Defendant's

8    conducting, engaging in, and/or carrying on business in California, and violating the laws of

9    California.

10                                 **DIVISIONAL ASSIGNMENT**

11        16.    Pursuant to Northern District of California Civil Local Rules 3-2(c), 3-2(d), and

12    3-5(b), assignment to the San Francisco or Oakland Division of this District is proper because

13    Plaintiff Love resides in Sonoma County, California, and a substantial part of the events or

14    omissions giving rise to the claim occurred in Sonoma County.

15                                          **PARTIES**

16        17.    Plaintiff Zenobia Love is an adult resident citizen of the State of California and

17    resides in Sonoma County, California.

18        18.    Plaintiff Armando Marquez is an adult resident citizen of the State of California

19    and resides in Riverside County, California.

20        19.    Plaintiff Andrew Rose is an adult resident citizen of the State of California and

21    resides in Ventura County, California.

22        20.    Ladder is a Delaware corporation with its principal place of business in Palo Alto,

23    California.

24        21.    Ladder is an insurance company that provides consumers with life insurance by

25    enabling consumers to make purchases online.

26        22.    Ladder does business throughout California and the entire United States.

27        23.    Ladder owns and operates Ladderlife.com.

28

# FACTUAL ALLEGATIONS

**I.    DEFENDANT LADDER AIDED, AGREED WITH, EMPLOYED, OR CONSPIRED TO ALLOW FULLSTORY TO WIRETAP OR EAVESDROP ON PLAINTIFFS' ELECTRONIC COMMUNICATIONS**

24.    FullStory provides a variety of real-time software products marketed as "Digital Experience Intelligence" for companies that want to learn more about the visitors to their websites and these visitors' interactions with their websites.[11]

25.    FullStory captures, records, and stores real-time consumer interactions with Ladder's website, including keystrokes, mouse clicks, and other electronic communications. Through its "Session Replay" feature, FullStory allows endless replays that capture a moment-by-moment replay of what the customer did on the webpage in the order in which it happened.[12]

26.    By implementing FullStory's JavaScript on its website, Ladder granted FullStory complete access to Plaintiffs' user experiences at Ladderlife.com.  Upon Plaintiffs' initial visit to Ladderlife.com, FullStory automatically began capturing and recording the keystrokes made and data submitted to Ladder by Plaintiffs.

27.    Enabling FullStory's "Digital Experience Intelligence" tools on Ladder's website allowed FullStory to intercept, capture, and record the keystrokes, mouse clicks, data entry, and other electronic communications of Plaintiffs and other visitors to Ladderlife.com.  It also allowed FullStory to track real-time events, create historical-based reports, and generate other information described in Paragraphs 1-10 above.  After eavesdropping in real-time on Plaintiffs' interactions with Ladder's website, FullStory created "a video-like reproduction" of Plaintiffs' visits and provided them to Ladder. [13]

---

[11] FullStory, *The Leading Digital Experience Intelligence*, FullStory, https://www.fullstory.com/platform/digital-experience-intelligence/ (last visited January 24, 2024).

[12] FullStory, *Explore the FullStory Platform*, Step 15 of 18, FullStory, https://www.fullstory.com/resources/fullstory-platform-tour/ (last visited July 26, 2023) ("FullStory's Session Replay safely and securely reproduces a user's interactions exactly how the user actually experienced it.").

[13] FullStory, *The Definitive Guide to Session Replay*, FullStory, https://www.fullstory.com/session-replay (last visited January 24, 2024).

28.     FullStory's capturing and recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with Ladderlife.com.  FullStory collects the data in real time and transmits it to FullStory's server, where it is stored and monitored.  FullStory's Privacy Policy provides that it can use or access Plaintiffs and the putative class members' data for its own commercial purposes, including to "manage, operate and improve" its services and "for research, analysis, modeling, marketing and improvement" of its services.  *See* FullStory's Privacy Policy at §4.2.[14]  Additionally, FullStory retains user "Replay sessions" and provides data retention services to its customers and charges a fee for storing and retaining this data.[15]

29.     In a 2017 study by Princeton University researchers concerning similar technology, the researchers noted that "the extent of data collected by these services far exceeds user expectations; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user."[16]

30.     Ladder provides a variety of insurance products.  To obtain a quote on a Ladder insurance plan, consumers fill out a form online at Ladderlife.com.  Users are prompted to select the "get my price" button.

31.     Ladder uses FullStory's "Digital Experience Intelligence" tools on Ladderlife.com through JavaScript coding on the webpage.  While browsing Ladderlife.com, Plaintiffs' web browsers sent "GET requests" to Ladder's server.  The server responded by sending HTML code to Plaintiffs' web browsers.  The browsers interpreted the code to allow the website to appear on Plaintiffs' screens.  Simultaneously, and without Plaintiffs' knowledge, Ladder's webpage also included JavaScript that sent "GET requests" to FullStory's server.  FullStory's server responded by sending its own code to Plaintiffs' web browsers, loaded the

---

[14] FullStory, *Privacy Policy*, FullStory, https://www.fullstory.com/legal/privacy-policy/ (last visited January 24, 2024).

[15] FullStory, *How Long Is Data Kept in FullStory?*, FullStory, https://help.fullstory.com/hc/en-us/articles/360020623694-How-long-is-data-kept-in-FullStory- (last visited January 24, 2024).

[16] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replay scripts*, Freedom To Tinker (Nov. 15, 2017), https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/ (last visited January 24, 2024).

1    code from FullStory, created a unique visitor ID for each Plaintiff's web browser, and instructed

2    each Plaintiff's web browser to begin simultaneously transmitting all information to FullStory as

3    Plaintiffs navigated through Ladder's website. The JavaScript, which is embedded into the

4    source code of Ladder's website, is shown in the red box below:



32.    After selecting the "get my price" button, Plaintiffs were required to answer

multiple questions, including questions about their medical health. Plaintiffs' responses were

automatically or simultaneously transmitted to FullStory and FullStory intercepted, captured, or

recorded this information for its own commercial purposes as well as for Ladder's purposes.

Plaintiffs communicated to Ladder information including, but not limited to:

a.    Name, zip code, gender, and age;

b.    Height and weight;

c.    Use of prescription medications and tobacco products;

d.    Medical conditions;

e.    The use of marijuana and THC;

1    f.    Use of illegal drugs; and

2    g.    Criminal record history.

3    33.    FullStory is not an affiliate or extension of Ladder. Instead, it is a third-party.

4 Plaintiffs did not know—and nothing on the face of Ladderlife.com gave them any indication—

5 that their answers in the insurance quote form were being monitored, intercepted, captured,

6 recorded, and stored by a third-party or that FullStory would use their information for its own

7 commercial purposes.

8    34.    Without Plaintiffs' consent, Ladder enabled FullStory to monitor, intercept, and

9 record their interactions with Ladderlife.com as it asked questions to obtain the above

10 information. The information—including the information listed in Paragraph 32, above—was

11 automatically captured in real time by FullStory using its "proprietary autocapture technology"

12 in conjunction with its session replay technology as the information was transmitted between

13 Plaintiffs' devices and Ladder's servers. Only after answering the questions seeking the

14 information listed in Paragraph 32 could Plaintiffs obtain a quote for insurance from Defendant

15 Ladder.

16    35.    Plaintiffs did not consent to the viewing, recording, or storing of their information

17 by FullStory and did not consent to Ladder's sharing of their information with FullStory.

18 Plaintiffs visited Ladder's website to obtain an insurance quote and were not put on notice of its

19 Privacy Statement, the Terms of Use, or provided with any other notification that the sensitive

20 information they were submitting was being monitored, intercepted, captured, recorded, or stored

21 by Ladder or FullStory or shared by Ladder with FullStory or any other third party.

22    36.    Rather, only those consumers who locate and take the extra step to click on the

23 hyperlink "CA Privacy Notice" located at the bottom of the Ladderlife.com website are informed

24 that Ladder collects PHI and PII. As such, the "CA Privacy Notice" —known as a

25 "browsewrap" agreement—is not effective or enforceable.

26    37.    Even still, the browsewrap notice does not notify users of the collection, storage,

27 and sharing of their information, which has already been intercepted, captured, and recorded in

28 real time as it was being submitted during the insurance quote form process.

38.     Ladder did not obtain Plaintiffs' consent or the consent of other consumers to collect, store, or share this information with FullStory before, during, and/or after Plaintiffs submitted their sensitive information to obtain an insurance quote.

39.     Only if a user were able to find, click, and read through the "CA Privacy Notice" would a consumer learn that Ladder "may disclose to or allow access to certain information about you by our online advertising and analytics partners."

40.     However, Plaintiffs and others who filled out an insurance quote form and provided their private information were not put on notice of Ladder's Terms and CA Privacy Notice.   As seen in the screenshot below of the webpage presented to Plaintiffs and users when they were in the process of filling out the form, Ladder's Terms and CA Privacy Notice were not accessible from this page. They were not made available on the page even via hyperlink, and nowhere on the page are users informed that their responses are being intercepted, captured, recorded, and stored by FullStory for its own commercial purposes.



41.     Ladder's Terms and CA Privacy Notice can only be accessed through a hyperlink that is located among a multitude of links, in small letters at the very bottom of its homepage, and not on the Application or "Get My Price" webpage.[17]

_____

[17] Ladder, *Get Instant Term Life Quote*, Ladder, https://www.ladderlife.com/apply (last accessed on July 26, 2023).

42.    By the time Plaintiffs and other consumers began to complete the online form, the interception and capture of their information had already occurred and their personal information had already been shared without their knowledge or consent.  In other words, even if users, such as Plaintiffs, reached the point where he or she located Ladder's CA Privacy Notice, decided to click through and review the CA Privacy Notice, and then did not agree and left the website, that user's personal information had already been intercepted, captured, and recorded by or shared with FullStory in real time.

43.    Ladder failed to give Plaintiffs and members of the putative class adequate notice that their form responses had been intercepted, captured, or recorded by FullStory, and that their activity would continue to be intercepted, captured, recorded, stored, and monitored by FullStory going forward.

44.    At the time, Ladder knew that it captured the keystrokes, mouse clicks, and other communications of visitors to its website, and Ladder supplied that information to FullStory and paid FullStory for this service.

45.    Pursuant to an agreement with FullStory, Ladder enabled Plaintiffs' confidential information to be intercepted, captured, recorded, accessed, and stored by FullStory by voluntarily embedding FullStory's JavaScript into its website at Ladderlife.com.  Under California law, this functions as a wiretap.

46.    Defendant Ladder and its co-perpetrator, FullStory, intercepted, recorded, and monetized valuable personal information of Plaintiffs and members of the putative class without their consent.

II.    **SPECIFIC FACTS DETAILING PLAINTIFFS' INTERACTIONS WITH LADDER'S WEBSITE**

47.    From approximately October 2022 to December 2022, Plaintiffs accessed the Ladder website through their computers and mobile phones and used Ladder's website to search for an insurance quote.  Plaintiffs and the class used smart phones (cellular telephony with integrated operating systems to enable web browsing) and/or personal computers or Wi-Fi-enabled laptops or tablets using a combination of cellular and landline telephony.  As such, the

conversations with Defendant Ladder were transmitted from a "cellular radio telephone" and/or "landline telephone" as defined by CIPA.

48.    Plaintiffs were in California on each occasion that they visited the website.

49.    During each visit, Defendant Ladder aided, abetted, and assisted FullStory's interception, capture, recording, and storing of Plaintiffs' electronic communications in real time, using the intercepted data to attempt to learn the identity, zip code, age, height, weight, use of prescription medications and tobacco products, and other PII and PHI of Plaintiffs while they sought an insurance quote.  On information and belief, Defendant Ladder was aware that FullStory would use Plaintiffs' confidential information for its own commercial purposes.

50.    Plaintiffs were unaware at the time that their keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real time and were being disclosed to FullStory (a third party), nor did Plaintiffs consent to share their private information with FullStory.

51.    During Plaintiffs' visits, FullStory's "proprietary autocapture" technology and "session replay" feature captured or recorded Plaintiffs' keystrokes and mouse clicks on the website.  It also captured the date and time of each visit, the duration of the visit, Plaintiffs' IP addresses, their location at the time of the visit, browser type, and the operating system on their devices.

52.    Users, including Plaintiffs, did not receive notice of Ladder's Privacy statement when they clicked, "Get my price," which initiates the interception of their responses on the form.

53.    Nor did Plaintiffs or users of Ladder's website provide informed consent when providing personal information that had already been intercepted, captured, recorded, shared with, and stored by FullStory without their knowledge or consent.

54.    Further, because Plaintiffs and users of Ladder's website were not adequately informed that their activity was being intercepted, captured, recorded, shared with, and stored by FullStory, Plaintiffs and these users of Ladder's website did not provide and could not have

provided informed consent to the interception, capturing, recording, sharing, or storing of the answers they provided.

55.    Ladder did not tell Plaintiffs or other visitors to its websites that their keystrokes, mouse clicks, and other communications were being intercepted, captured, recorded, shared with, or stored by FullStory.  Even Ladder's more limited disclosures were not made, if at all, until *after* the interception had already taken place.

56.    Neither Plaintiffs nor any class member consented to being wiretapped on Ladder's website or to the interception, capture, recording, sharing, or storing of their communications with FullStory.  Furthermore, any purported consent was ineffective because (i) the wiretapping began from the moment Plaintiffs and class members accessed Ladder's website; and (ii) Ladder's Privacy statement did not disclose the wiretapping, FullStory's interception, capture, recording, and storing of their PII, or that Ladder was sharing Plaintiffs' and putative class members' sensitive information with a third-party.

57.    At no time before or during Plaintiffs' browsing of its website did Ladder disclose that it or FullStory would be intercepting, capturing, or recording users' activities in real time.

58.    Nor did Ladder's Privacy statement disclose that it or FullStory was intercepting, capturing, or recording a user's activities in real time.  Even if Ladder had disclosed its wiretapping at issue in its Privacy Statement, Ladder still acted without Plaintiffs' consent because Ladder did not ask for users' consent before it aided, agreed, employed, or conspired with FullStory in eavesdropping and wiretapping them.

**CLASS ACTION ALLEGATIONS**

59.    Plaintiffs bring this lawsuit as representative of a class of all resident citizens of California who visited Ladderlife.com and provided personal information on Ladder's form to receive a quote for insurance and whose information was intercepted and disclosed to FullStory.

60.    The "Class Period" begins four years preceding the date of the filing of the initial complaint and continues to the present.

61.    Plaintiffs reserve the right to modify, change, or expand the class definition as appropriate based on further investigation and discovery obtained in the case.

62.     Excluded from the class are Defendant, its employees, agents, and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiffs' counsel.

63.     This action may be properly maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.

64.     **Numerosity:**  The class is sufficiently numerous because it consists of at least thousands of individuals, making joinder impractical.

65.     **Commonality and predominance:** A well-defined community of interest exists among class members.  Common questions of law and fact exist with regard to each of the claims and predominance over questions affecting only individual class members.  Questions common to the class include:

      a.   whether Defendant Ladder violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, by aiding, agreeing with, employing, or conspiring with FullStory to wiretap Plaintiffs' communications with Ladder;

      b.   whether Defendant Ladder invaded Plaintiffs' and putative class members' privacy rights in violation of the California Constitution; and

      c.   whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

66.     **Typicality:**  The claims of the named Plaintiffs are typical of the claims of the class that they represent and arise out of the same standard form improper conduct perpetrated on members of the class.

67.     **Adequacy of representation:**  Plaintiffs will fairly and adequately protect the interests of the members of the class that they represent and have no interest antagonistic to those of other class members.  Plaintiffs have retained class counsel competent to prosecute class actions and financially able to represent the class.

68.     **Superiority:**  The class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the class is impracticable.  The common questions of law and fact regarding Defendant Ladder's conduct

and the interpretation of form documents devised by Defendant predominate over any questions affecting only individual class members.  The interest of judicial economy strongly favors adjudicating the claims as a class action rather than on an individual basis because the amount of any individual's damages is too small to make it practicable to bring individual lawsuits.  The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation.  Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives.

69.    Class action treatment is proper, and this action should be maintained as a class action because questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

70.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Class-wide treatment provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

## COUNT I

### Violation of the California Invasion of Privacy Act ("CIPA")
### Cal. Penal Code § 631

71.    Plaintiffs incorporate and repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

72.    Plaintiffs bring this claim individually and on behalf of the members of the class against Defendant Ladder.

73.     To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephone communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

74.     Section 631(a) is not limited to phone lines but also applies to newer technology such as computers, the internet, and email.

75.     FullStory's proprietary autocapture and session replay technology products are a "machine, instrument, contrivance, or . . . other manner" used to engage in the prohibited conduct at issue in this action.

76.     FullStory's proprietary autocapture and session replay technology intercepted, captured, or recorded Plaintiffs and class members' communications in real time as the information was entered and simultaneously transmitted over the lines of internet communication between Plaintiffs' devices and Ladder's servers.  Plaintiffs and the putative class members' communications with Defendant Ladder were conducted using smart phones (cellular telephony with integrated operating systems to enable web browsing) and/or personal computers or Wi-Fi-enabled laptops or tablets and over the lines of internet communication.

77.   **Ladder's Violations:** At all relevant times, by using FullStory's autocapture and session replay technology, Ladder:

    a.    intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiffs and class members on the one hand, and Ladder's website on the other hand; and

    b.    aided, agreed with, employed, or conspired with FullStory to implement FullStory's technology and to accomplish the wrongful conduct at issue here.

78.   Plaintiffs and class members did not consent to any of Defendant Ladder's actions connected with FullStory's wiretaps on Ladder's website. Nor did Plaintiffs or class members consent to Ladder providing intentional access, interception, reading, learning, recording, storage, and collection of Plaintiffs' and class members' electronic communications by FullStory.

79.   Defendant Ladder's violation of section 631(a) constitutes an invasion of privacy. Information transmitted by Plaintiffs and intercepted by Defendant Ladder's co-perpetrator, FullStory, included, among other things, Plaintiffs' name, zip code, gender, age, height, weight, use of prescription medications and tobacco products, medical conditions, use of marijuana and THC, use of illegal drugs, and criminal record history. This information is sensitive and confidential and Plaintiffs had a reasonable expectation of privacy when they believed that they were only sharing this information with Ladder for the purpose of obtaining an insurance quote from Ladder. FullStory's interception, capture, recording, storage, and misuse of Plaintiffs' sensitive and confidential information is highly offensive and egregious. Plaintiffs' personal and confidential information constitutes more than digital identification information such as an IP address. Instead, Plaintiffs' PII and PHI was illegally obtained by FullStory as a result of Defendant Ladder's decision to allow FullStory access to Plaintiffs' PII and PHI. Plaintiffs' PII and PHI are sensitive and confidential information and the disclosure and interception of Plaintiffs' PII and PHI by Defendant Ladder is highly offensive and constitutes egregious conduct.

80.   Plaintiffs and class members seek all relief available under Cal. Penal Code § 637.2, including statutory damages of $5,000 per violation.

81.     Plaintiffs further request, as provided by CIPA, reasonable attorneys' fees and costs of suit, and punitive damages to be determined by a jury, sufficient to prevent or deter the same or similar conduct by Ladder.

**COUNT II**

**Invasion of Privacy**
**California Constitution, Art. 1, § 1**

82.     Plaintiffs incorporate and repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

83.     Plaintiffs bring this claim individually and on behalf of the members of the class against Defendant Ladder.

84.     Plaintiffs and class members have a strong interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII and PHI; and (2) making personal decisions and/or conducting personal activities without observation, intrusion, or interference, including the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiffs' and class members' knowledge or consent.

85.     Defendant Ladder wrongfully intruded upon Plaintiffs' and class members' seclusion in violation of California law by aiding, agreeing with, employing, or conspiring to allow FullStory to intercept, capture, record, and store Plaintiffs' confidential PII and PHI without Plaintiffs' knowledge or consent.  Plaintiffs and class members reasonably expected that the private, personal, sensitive, confidential PII and PHI they entrusted to Ladder would be kept private and secure and would not be disclosed to any unauthorized third party or for any improper purpose.

86.     At all relevant times, by implementing FullStory's wiretaps, autocapture technology, and session replay tools on Ladder's website, Defendant Ladder intentionally invaded Plaintiffs' and class members' privacy rights under the California Constitution and assisted or allowed FullStory in doing so.

87.     Defendant Ladder unlawfully invaded Plaintiffs' and class members' privacy rights by:

a.    Harvesting their personal information, including sensitive, confidential PII and PHI, and allowing access of this confidential PII and PHI to FullStory for improper purposes;

b.    enabling the disclosure, interception, capturing, recording, sharing, use, and storage of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

c.    enabling the disclosure, interception, capturing, recording, sharing, use, and storage of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

88.    A reasonable person would find it highly offensive that Defendant Ladder received, collected, and allowed Plaintiffs' and class members' private personal information to be intercepted, captured, or recorded by FullStory without their consent and that Defendant Ladder allowed FullStory to use and store their private personal information for commercial purposes without their consent.

89.    Plaintiffs and class members did not consent to any of Defendant Ladder's actions in implementing FullStory's wiretaps, autocapture technology, or session replay tools on Ladder's website.

90.    In failing to adequately protect Plaintiffs' and class members' personal information, Defendant Ladder acted knowingly and in reckless disregard of their privacy rights. On information and belief, Defendant Ladder was aware that using FullStory's autocapture technology and session replay tools on Ladderlife.com would allow FullStory to intercept, capture, and record Plaintiffs' PII and PHI and that Plaintiffs' private information would be stored and used by FullStory for its own commercial purposes. Nevertheless, Ladder chose to use FullStory's autocapture technology and session replay tools without Plaintiffs' consent. Defendant Ladder knew or should have known that its conduct would be highly offensive to a reasonable person in Plaintiffs' position.

91.    Defendant Ladder's unlawful invasions of privacy damaged Plaintiffs and class members. As a direct and proximate result of these invasions, Plaintiffs and class members suffered mental distress, and their reasonable expectation of privacy were frustrated and defeated.

92.    This invasion of privacy is serious in nature, scope, and impact.

93.     This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

94.     Plaintiffs and class members therefore seek all relief available for an invasion of privacy in violation of Article I, Section 1 of California's Constitution.

95.     Plaintiffs' counsel is entitled to attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request the Court enter judgment against Defendant through an order:

    a.    Certifying the class under Fed. R. Civ. P. 23 and naming Plaintiffs as the representatives of the class and Plaintiffs' attorneys as class counsel;

    b.    Declaring that the Defendant's conduct violates the laws and standards referenced above;

    c.    Finding in favor of Plaintiffs and the class on all counts asserted herein;

    d.    Granting Plaintiffs and the class compensatory, statutory, and/or punitive damages or restitution;

    e.    Awarding prejudgment interest on all amounts awarded;

    f.    Awarding Plaintiffs and the class their reasonable attorneys' fees and expenses and costs of suit; and

    g.    Such other and further relief as the Court deems necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims and issues so triable.

///
///
///

1   Dated: January 25, 2024        Respectfully submitted,

2                        **BERMAN TABACCO**

3                        By:    */s/ Matthew D. Pearson*

4                               Matthew D. Pearson

5                        Joseph J. Tabacco, Jr.

6                        Alexander S. Vahdat
Christina Sarraf

7                        425 California Street, Suite 2300
San Francisco, CA 94104

8                        Telephone: (415) 433-3200
Facsimile: (415) 433-6382

9                        Email: jtabacco@bermantabacco.com

10                             mpearson@bermantabacco.com
avahdat@bermantabacco.com

11                             csarraf@bermantabacco.com

12                        Christina D. Crow (Admitted *pro hac vice*)
**JINKS CROW, PC**

13                        Union Springs Office
219 Prairie Street North

14                        Union Springs, Alabama 36089
Telephone: (334) 738-4225

15                        Facsimile: (334) 738-4229

16                        Email: christy.crow@jinkscrow.com

17                        Brent Irby (Admitted *pro hac vice*)
**IRBY LAW LLC**

18                        2201 Arlington Avenue South

19                        Birmingham, AL 35205
Telephone: (205) 936-8281

20                        Email: brent@irbylaw.net

21                        James M. Terrell (Admitted *pro hac vice*)

22                        **METHVIN & TERRELL, YANCEY, STEPHENS &**
    **MILLER, P.C.**

23                        The Highland Building
2201 Arlington Avenue South

24                        Birmingham, AL 35205
Telephone: (205) 939-3006

25                        Email: jterrell@mtattorneys.com

26                             brebarchak@mtattorneys.com

27                        *Attorneys for Plaintiffs and the Proposed Class*

28